# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CV-01348 JAR |
| | ) |
| KELLI MASIAKIEWICZ, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff AMCO Insurance Company ("AMCO") brings this declaratory judgment action against its insured Defendant Kelli Masiakiewicz, requesting the Court find Defendant is not entitled to underinsured motorist ("UIM") coverage under a personal auto insurance policy it issued to Defendant. Defendant filed counterclaims against AMCO for breach of contract and vexatious refusal to pay. AMCO has moved for summary judgment. (Doc. No. 14). The motion is fully briefed and ready for disposition.

**I.    Background**

AMCO issued Defendant an insurance policy with UIM coverage, Policy No. PPAM0050159063-0, effective January 15, 2015 to January 15, 2016 (the "Policy"). On or about May 29, 2015, Defendant was injured in an automobile accident caused by another driver, Austin Latham. Latham's insurer agreed to pay Defendant $100,000, the limit of Latham's insurance policy. Because Defendant claims her actual damages exceed $100,000, she sought additional coverage under an "underinsured motorist" provision in her AMCO Policy. AMCO denied her claim on the grounds that Latham's vehicle does not qualify as an "underinsured motor vehicle." Defendant argues that the language of the Policy, when read as a whole, is ambiguous as to the

meaning of "underinsured motor vehicle" and must be construed against AMCO for a finding that she is entitled to UIM coverage.

## II.     Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

## III.     Discussion

The interpretation of an insurance policy is a question of law. United Fire & Cas. Co. v. Titan Contractors Serv., Inc., 751 F.3d 880, 883 (8th Cir. 2014) (citing Schmitz v. Great Am. Assurance Co., 337 S.W.3d 700, 705 (Mo. banc 2011)). When interpreting insurance policies, Missouri courts apply the meaning that would be given to the policy by an ordinary person of average understanding if purchasing insurance. Id. at 883-84 (internal citations and quotation marks omitted). If the policy language is unambiguous, "the contract will be enforced as written." Id. (quoting Rice v. Shelter Mut. Ins. Co., 301 S.W.3d 43, 47 (Mo. banc 2009)). But if

the policy language is ambiguous, it will be construed against the insurer. Id.

Language is ambiguous if it is reasonably open to different constructions. Id. (quoting Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 690 (Mo. banc 2009)). If an insurance clause "appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous." Burger v. Allied Prop. and Cas. Ins. Co., No. 4:14CV393 RWS, 2015 WL 1474910, at *2 (E.D. Mo. Mar. 31, 2015) (quoting Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007)). However, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." Id. (quoting Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007)).

### A. Policy provisions

The relevant provisions of the AMCO Policy are as follows:

**UNDERINSURED MOTORISTS COVERAGE**

**INSURING AGREEMENT**

A.   We will pay compensatory damages which an "insured" is legally obligated to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".
...

C.   "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability *is less than* the limit of liability for this coverage. (Emphasis added).

_____

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage ***is our maximum limit of liability for all damages***, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. (Emphasis added).

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles shown in the Declarations; or

4. Vehicles involved in the accident. A vehicle and attached "trailer" are considered one vehicle. Therefore, the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer".
…

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

_____

**LIABILITY COVERAGE**

**OTHER INSURANCE**

A.    If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability ***bears to the total of all applicable limits***. (Emphasis added).

_____

**DECLARATIONS**

**COVERAGE AND LIMITS OF LIABILITY (in Dollars)**

Coverage is provided where a premium or limit of liability is shown for coverage.

UNDERINS. MOTORIST (PER POLICY)

EACH PERSON 100,000
EACH ACCIDENT 300,000

A premium is shown for this coverage.

_____

B. Analysis

There is no genuine issue of material fact in dispute. Rather, the parties' dispute concerns whether the term "underinsured motor vehicle" is ambiguous. Under the plain language of the Policy's Insuring Agreement, UIM coverage is available where the tortfeasor's bodily injury liability limit is less than Defendant's UIM limit. AMCO argues that because Latham's bodily injury liability limit of $100,000 is the same as Defendant's $100,000 UIM limit, there is no UIM coverage as a matter of law.

Defendant does not argue that the Policy's definition of "underinsured motor vehicle" is itself ambiguous. Instead, she contends the definition conflicts with the Declarations page, Insuring Agreement section, Limit of Liability section, and Other Insurance clause, rendering the Policy ambiguous. She cites to several Missouri cases for support. See Miller v. Ho Kun Yun, 400 S.W.3d 779, 784 (Mo. Ct. App. 2013); Simmons v. Farmers Ins. Co., 479 S.W.3d 671 (Mo. Ct. App. 2015); and Kissinger v. Am. Family Mut. Ins. Co., 563 S.W.3d 765 (Mo. Ct. App. 2018).

AMCO maintains that this case is controlled by Swadley v. Shelter Mut. Ins. Co., 513 S.W.3d 355 (Mo. banc 2017) and its progeny, which have consistently rejected the arguments Defendant advances here. (Doc. No. 15 at 5-6). In that case, the Swadleys had an insurance policy with UIM coverage in the amount of $100,000. Id. at 356. The policy defined "underinsured motor vehicle" as a vehicle covered by an insurance policy applicable to the

collision "***but the monetary limits of that ... policy, are less than the limits of underinsured motorists coverage shown in the Declarations***." Id. at 356 (emphasis in the original). The Missouri Supreme Court believed the clear effect of this definition was that the policy would not provide UIM coverage when the motor vehicle in question had liability coverage equal to or greater than the UIM limit of liability. Id. at 358. In so holding, the Swadley court reasoned:

> Nowhere does this policy expressly promise UIM coverage under every circumstance, and nowhere does it promise UIM coverage when the underinsured motorist has liability coverage equal to or greater than the UIM limit. Therefore, the policy is not rendered ambiguous by the fact that the policy's definition of "underinsured motor vehicle" restricts UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit.

Id. at 357.

The Missouri Supreme Court had earlier reached the same conclusion in Rodriguez v. General Accident Ins. Co. of America, 808 S.W.2d 379 (Mo. 1991). As in Swadley, the court held that the plaintiffs were not entitled to UIM coverage when the at-fault driver's vehicle did not meet the insurance policy's unambiguous definition of "underinsured motor vehicle":

> The contract between [the insurance company] and the [plaintiffs] clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage." By their own admission, the [plaintiffs] acknowledge that [the at-fault driver's] liability insurance coverage was $50,000. Since [the at-fault driver's] coverage is equal to the limit of liability under the [plaintiffs'] policy, [the at-fault driver] was not an underinsured motorist as defined by the [plaintiffs'] policy.

Id. at 382.

The Swadleys argued that aside from the definition of "underinsured motor vehicle," Shelter's policy was ambiguous because the declarations and other portions of the policy promised UIM coverage up to $100,000 but contained restrictions and set-off provisions ensuring that Shelter would never be obligated to pay that full amount. Id. The Missouri Supreme Court rejected this argument, reasoning that:

- 6 -

> [A]ny ambiguity *as to the amount* of UIM coverage provided by this policy is irrelevant because such an ambiguity, if one exists, would not render this policy ambiguous *as to when* UIM coverage applies. Evaluating the policy as a whole, UIM coverage unambiguously does not apply when, as here, the underinsured motorist has liability coverage equal to or greater than $100,000.

Id. at 357-58 (emphasis in the original).

Following Swadley, this Court has similarly held that UIM coverage does not apply when the tortfeasor's vehicle does not qualify as an "underinsured motor vehicle." See Pierce v. Grinnell Select Ins. Co., No. 1:20CV144 SNLJ, 2021 WL 2254998, at *2 (E.D. Mo. June 3, 2021); Secura Ins. v. Northington, No. 4:18 CV 1315 CDP, 2019 WL 2476588, at *4 (E.D. Mo. June 13, 2019); Country Preferred Ins. Co. v. Lee, 309 F. Supp. 3d 685, 690-91 (E.D. Mo. 2018), *aff'd*, 918 F.3d 587 (8th Cir. 2019); Allied Prop. & Cas. Ins. Co. v. Bresler, No. 4:16CV1402 SNLJ, 2017 WL 2021083, at *2 (E.D. Mo. May 12, 2017). See also Lawson v. Progressive Cas. Ins. Co., 527 S.W.3d 198, 202 (Mo. Ct. App. 2017).

In AMCO Ins. Co. v. Williams, 850 F.3d 989 (8th Cir. 2017), the Eighth Circuit considered the meaning of a UIM provision in an identical AMCO Policy. As is the case here, the insureds in Williams argued that the definition of "underinsured motor vehicle" conflicted with the Declarations page, Insuring Agreement section, Limit of Liability section, and Other Insurance clause of the policy, thereby rendering it ambiguous. Id. at 994. The Eighth Circuit rejected this argument and entered summary judgment for AMCO.

**Declarations page**

Defendant argues that the definition of "underinsured motor vehicle" conflicts with the Declarations page of the Policy, which lists a UIM limit of liability of $100,000 but has no other limitations or exclusions. (Doc. No. 25 at 4-6). The Williams court held that under Missouri law, AMCO's UIM policy was not ambiguous, based on the fact that the declarations page stated the

UIM limit "in abbreviated form," while the UIM endorsement limited coverage to cases where the tortfeasor's bodily-injury liability limit was less than the UIM liability limit. Williams, 850 F.3d at 994 (quoting Todd, 223 S.W.3d at 160). To find otherwise, the court explained, would be to read the declarations page in isolation, rather than interpreting the policy as a whole. Id. The Court agrees. Nothing in the Declarations page would lead an ordinary person of average understanding to believe that the Declarations themselves stood alone and were not subject to terms in the Policy and its endorsements. Indeed, the relevant header specifically directs the reader to the rest of the Policy by stating "UNDERINS. MOTRST (PER POLICY)." There is "nothing ambiguous or misleading about a policy that offers underinsured motorist coverage in a certain amount on its face sheet and then defines 'underinsured motor vehicle' as it is defined here." Secura, 2019 WL 2476588, at *5 (quoting Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 867-68 (E.D. Mo. 2015)); see also Hughes, 712 F.3d at 394-96 (relying on Rodriguez to enforce a substantively similar definition even though the policy stated on the declarations page that it provided $100,000 in underinsured motorist coverage); Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp. 3d 943, 956-57 (E.D. Mo. 2014) (rejecting similar argument).

**Insuring agreement**

The Williams court also held that under Missouri law, the definition of "underinsured motor vehicle" in AMCO's UIM policy did not conflict with the Insuring Agreement section, which promised to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury.' " The court explained that like the Declarations argument, this claim failed to read the Policy as a whole and ignored other policy language that limits UIM coverage. Williams, 850 F.3d at 994.

**Limit of liability**

Defendant further argues that ambiguity exists because the Limit of Liability provision purports to insure her up to her policy limit of $100,000 for "all damages," but then later restricts coverage by way of set-off, that is, paying only the difference between the Policy's UIM limit and that recovered from the at-fault driver. (Doc. No. 25 at 2, 5). Defendant contends that an ordinary person of average understanding might think the offset is against the total uncompensated damages rather than the stated amount of the $100,000 limit. (Id. at 2).

In addressing the same argument, the Williams court concluded that the set-off provisions of AMCO's Policy did not make its UIM coverage illusory, so as to make the policy ambiguous:

> Even if the policy did contain inconsistent statements about the amount of coverage due once coverage has been triggered, such inconsistency would be immaterial to the question at issue here: whether the policy provides for coverage at all. As we explained in [Owners Ins. Co. v. Hughes, 712 F.3d 392, 396 (8th Cir. 2013)] disputes about the amount [insurer] must contribute simply do not "inject ambiguity into the meaning of what is a covered 'underinsured motor vehicle' " so as to render the UIM definition unclear. Nothing in [insured's] UIM limit-of-liability section undermines the requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage.

850 F.3d at 994 (citing Burger v. Allied Prop. & Cas. Ins. Co., 822 F.3d 445, 450 (8th Cir. 2016)). The Williams court went on to state that the limit of liability provision actually reinforced that UIM coverage was not "excess coverage" but rather provided protection if other persons legally responsible had lesser liability limits. Id. at 995 (citing Rodriguez, 808 S.W.2d at 381).

The same reasoning applies here. UIM coverage is absent at the outset because there is no underinsured motor vehicle by definition. Thus, any arguable ambiguity or uncertainty relating to the *amount* of UIM coverage as described in the Policy's Limit of Liability provision is not relevant to whether UIM coverage exists in the first place. See Hughes, 712 F.3d at 396 (disputes

about the amount insurer must contribute simply do not "inject ambiguity into the meaning of what is a covered 'underinsured motor vehicle' " so as to render the UIM definition unclear); see also Burger, 822 F.3d at 450 ("Even if the policy did contain inconsistent statements about the amount of coverage due once coverage has been triggered, such inconsistency would be immaterial to the question at issue here: whether the policy provides for coverage at all."); Allied Prop. & Cas. Ins. Co. v. Stuart, 230 F. Supp. 3d 969, 978 (E.D. Mo. 2017) ("[D]isputes about the *amount* Allied must contribute simply do not "inject ambiguity into the meaning of *what* is a covered underinsured motor vehicle so as to render the UIM definition unclear … Nothing in [the] UIM limit-of-liability section undermines the requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage.").

**Other insurance**

As for the Policy's "other insurance" clause, AMCO notes that Defendant has referred to the "other insurance" provision applicable to liability coverage, as opposed to UIM coverage. The "other insurance" provision applicable to UIM coverage provides:

**OTHER INSURANCE**

***If there is other applicable underinsured motorists coverage available*** under one or more policies or provisions of coverage:

1. Any recovery for damages under this coverage may equal but not exceed the highest applicable underinsured motorists coverage limit under this policy or other underinsured motorists coverage providing coverage on either a primary or excess basis.

2. This policy provides primary underinsured motorists coverage where "your covered auto" is involved. Where this policy provides underinsured motorists coverage on a primary basis, we will pay only our share of the loss. Our share is the proportion that our limit of liability as stated in the Declarations bears to the total of all applicable underinsured motorists coverage under other policies that apply on a primary basis.

3. Any underinsured motorists coverage we provide with respect to a vehicle you

> do not own shall be excess over any other collectible underinsured motorist insurance providing coverage on a primary basis and will apply only in the amount that our limit of liability as stated in the Declarations exceeds the sum of the applicable limits of liability of all other applicable underinsured motorists insurance. We will pay only after other applicable underinsured motorists insurance limits have been paid. (Emphasis added).

Because there is no record evidence of other "applicable underinsured motorists coverage available" other than the AMCO Policy, the Court finds this provision inapplicable.

Further, the Court finds no conflict or ambiguities arising from this provision. "Missouri courts have found ambiguity where a policy's 'other insurance' clause suggests that UIM coverage is excess over any contributions from a tortfeasor." Burger, 822 F.3d at 450. Here, the clause is appropriately limited in that it is addressed only to the possibility of other applicable UIM coverage under other policies. See Stuart, 230 F. Supp. 3d at 979 (citing Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 871 (E.D. Mo. 2015)). Thus, the clause does not suggest that AMCO will always cover damages over and above the contributions of a tortfeasor's insurer. Id. (internal citation omitted). See also Secura, 2019 WL 2476588, at *6-7 (finding plain language of "other insurance" clause limits excess payment to situations where the limits of liability of all other applicable insurance are less than the limit of liability for the UIM coverage under the Policy, consistent with definition of "underinsured motor vehicle") (citing Melton v. Country Mut. Ins. Co., 75 S.W.3d 321, 326 (Mo. Ct. App. 2002)).

Lastly, Defendant's reliance on Miller, 400 S.W.3d 779; Simmons, 479 S.W.3d 671; and Kissinger, 563 S.W.3d 765, is unavailing. These Missouri Court of Appeal cases run counter to Missouri Supreme Court precedent that this Court is bound to follow. Hughes, 712 F.3d at 393 (noting that courts are "bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law" and are not bound by decisions of the Missouri Court of Appeals (internal quotation omitted)); Stuart, 230 F. Supp. 3d at 978.

### IV. Conclusion

When an insurance policy is unambiguous, the Court must enforce the language of the policy as written. United Fire & Cas. Co., 751 F.3d at 883-84. Because Latham had liability coverage equal to $100,000, and none of the other provisions cited by Defendant create ambiguity, the AMCO Policy does not cover Defendant's UIM claim as a matter of law. Thus, AMCO is entitled to judgment in its favor on its complaint and on Defendant's counterclaims for breach of contract and vexatious refusal to pay.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [14] is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.


Dated this 24th day of May, 2022.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**